## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **UZEZI AJOMALE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:17-539-JB-MU** |
| | ) | |
| **QUICKEN LOANS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

This matter is before the Court on Defendant Quicken Loans, Inc.'s ("Quicken") Motion for Summary Judgment and supporting memorandum of law (Docs. 77 and 78), Plaintiff's Response in Opposition (Doc. 84), and Defendant's Reply (Doc. 88). The Motion is ripe for review. After careful consideration, the Court finds Defendant's Motion is due to be **GRANTED** on the grounds and for the reasons set out in this Order.

### I.    BACKGROUND

Plaintiff, Uzezi Ajomale, alleges violations of the Fair Credit Reporting Act, 15 U.S.C. §1681g *et seq.* ("FCRA"). Specifically, Plaintiff claims that Quicken failed to comply with §1681g(g)(1), which requires lenders to send credit score disclosure statements ("CSD's"). Plaintiff contends she was entitled to receive a CSD because Quicken pulled her credit score "in connection with" a loan application "sought" by her ex-husband. Plaintiff also alleges that Quicken's failure was negligent or willful.

Quicken advances three independent arguments in its Motion for Summary Judgment. First, it argues the undisputed evidence establishes that Plaintiff was not entitled to a CSD under

the FCRA because (i) Quicken did not "use" Plaintiff's credit score, (ii) Plaintiff never sought or initiated a loan application, and (iii) the CSD requirement does not apply to mere inquiries. Second, Quicken argues Plaintiff has failed to demonstrate a genuine issue of material fact that Quicken acted willfully or negligently, as required to establish liability under the FCRA. Third, it argues Plaintiff has failed to produce evidence of damages.

For the reasons set out below, the Court finds that summary judgment is due to be granted on Quicken's second argument. The Court therefore will not address Quicken's first or third arguments.

## II.    STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, "a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party moving bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Where the moving party does not have the burden of proof at trial, it may show that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the moving party meets its initial burden, the non-movant must set forth specific facts, supported by citation to the evidence, to support the elements of the case at trial, and therefore, establish that there is a genuine issue for trial. *See* Rules 56(c) and 56(e), Fed.R.Civ.P.

The court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." *McDowell v. Brown*, 392 F. 3d 1283, 1288 (11th Cir. 2004). "[A]ll reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant." *Citizens Trust Bank v. Lett*, 2015 WL 4254561 at * 1 (N.D. Ala. 2015).   However, the court is not "constrained to accept all the nonmovant's factual characterizations and legal arguments." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 - 59 (11th Cir. 1994). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.  It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F. 3d 798, 807 (11th Cir. 2010) (quoting *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)).

## III.   FINDING OF FACTS

On February 20, 2017, Plaintiff's then-husband logged onto quickenloans.com to investigate the possibility of refinancing the mortgage on the home he and Plaintiff shared.  Mr. Ajomale provided his name, date of birth, address, and SSN into a blank form on Quicken's webpage.  (Doc. 84 at 4).  On that webpage, Quicken also provided an identical form for information on the prospective borrower's spouse.  (*Id.* at 5).  Mr. Ajomale provided Plaintiff's information in that form.  Mr. Ajomale then ticked a box affirming that he had Plaintiff's consent to provide her information and for Quicken to begin its process.  Plaintiff had no knowledge of Mr. Ajomale's activity at the time.  (*Id.* at 6).

After Quicken received Mr. Ajomale's and Plaintiff's credit scores, Mr. Ajomale was put in touch with Jon Bethcer, a mortgage banker.  (Doc. 84 at 7).  Mr. Ajomale and Mr. Betcher spoke through a two-way internet chat made available through Quicken's website.  (*Id.*).  During their conversation, Mr. Betcher informed Mr. Ajomale that, "Uzezi['s] credit is under 620, it is in the low 500s.  Only chance we have is to have mortgage in your name and keep you both on title," to which Mr. Ajomale responded, "That's fine." (Doc. 84-6 at 4).  Mr. Betcher then initiated Mr. Ajomale's loan application.

Plaintiff learned that her husband provided her information to Quicken shortly after he did so.  (Doc. 84 at 14).   On March 13, 2017, Plaintiff reached out to Mr. Betcher to request a copy of any documents sent to her husband regarding the application.  (Doc. 84-10 at 1).  On March 14, 2017, Plaintiff sent Mr. Betcher another email, asking how the refinancing process could affect her ownership interest in her home.  (*Id.* at 5).  On March 19, 2017, Plaintiff told Mr. Betcher she would "not be participating [in the refinancing process]" and cancelled the application.  (Doc. 84-1 at 10 – 11).  During that conversation, Plaintiff indicated she was upset that her husband did not "include" her when he initiated the process.  (*Id.*).  On April 14, 2017, Plaintiff again contacted Quicken, but asked if the refinancing process could be "extended."  (Doc. 84-1 at 15).

Plaintiff's Complaint alleges that Defendant's failure to provide a CSD was a negligent or willful violation of the FCRA.  At her deposition, though, Plaintiff failed to identify any document, testimony, or other evidence to support these allegations.   Regarding willfulness, Plaintiff testified:

Q: Okay. Are you aware of any documents that show that Quicken Loans acted willfully?
…

> A: Not sure.
> Q: Are you aware of any testimony that Quicken Loans acted willfully? ...
> A: I'm not sure.
> Q: Or any evidence at all that Quicken Loans acted willfully? ...
> A: Not sure.
> Q: So, when you say you're not sure, you can't tell me about any as you sit here today, correct? ...
> A: Not sure.
> Q: Do you know of any?
> A: I'm not sure.

(Doc. 79-3 at 45 – 46).  Plaintiff likewise failed to provide any evidence of negligence:

> Q: Do you have any evidence that Quicken Loans acted negligently? ...
> A: Not sure.
> Q: You can't point to any evidence as you sit here today? ...
> A: No.

(*Id.* at 46).  Plaintiff did not provide supplemental discovery responses or attempt to clarify or correct her testimony.  Plaintiff's testimony is set out in Defendant's Motion for Summary Judgment but Plaintiff does not address it in her Opposition.

## IV.   DISCUSSION

Before turning to the merits of Quicken's argument regarding the nature of its conduct, the Court notes Plaintiff's Opposition (Doc. 84) does not rebut or otherwise address Quicken's argument that there is no evidence Quicken acted negligently.[1]  Therefore, the Court finds Plaintiff abandoned her claim that Quicken negligently violated the FCRA.  *See Wardford v. Carrington Mortg. Servs.*, 2018 U.S. Dist. LEXIS 221511, at *19 (N.D. Ga. Sep. 19, 2018) (citing *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001)).  Plaintiff is left with her claim that Quicken acted willfully.

---

[1] In her Opposition, Plaintiff asserts that Quicken's failure to send a CSD "was not an accident." (Doc. 84 at 8).  Plaintiff confines her Opposition to arguments that Quicken "knowingly," "recklessly," and "willfully" violated the FCRA.

Quicken correctly notes that the FCRA is not a strict liability statute. In order to overcome Quicken's Motion for Summary Judgment, the Plaintiff must demonstrate a genuine issue of material fact that Quicken "willfully fail[ed] to comply" with the statute. *See*, 15 U.S.C. § 1681n(a). To support her claim that Quicken willfully violated the FCRA, Plaintiff must produce evidence that Quicken "knowingly and intentionally committed an act in conscious disregard for the rights of others" which it "knows to violate the law." *Jordan v. Equifax Info. Servs., LLC*, 410 F. Supp. 2d 1349, 1354 (N.D. Ga. 2006) (citation omitted). Quicken cannot be liable for a knowing violation if its reading of the FCRA was "objectively reasonable." *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017). Plaintiff must prove more than Quicken violated a reasonable reading of the FCRA. She must show that Quicken "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2017)). A reading that is "not objectively unreasonable based on the text of the Act, judicial precedent, or guidance from administrative agencies falls well short of raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability." *Id.* (quoting *Safeco Ins.*, 551 U.S. at 70, and stating an agency "that adopts an objectively reasonable reading of the Act does not knowingly violate the Act."). Further, if the defendant's interpretation is "not objectively unreasonable," courts will not look at the defendant's subjective intent. *See Pedro*, 868 F.3d at 1280 (citing *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1319 (11th Cir. 2009) (declining to consider the subjective intent of a consumer reporting agency when it "act[ed] in accord with an objectively reasonable interpretation of the Act.")).

### A.      Plaintiff's Evidence of Willfulness

Plaintiff offers two categories of evidence as proof that Quicken willfully violated the FCRA.  First, she contends Quicken recklessly disregarded all interpretative signposts regarding the construction of the FCRA section requiring the provision of CSDs, *i.e.*, 15 U.S.C. § 1681g(g)(1).  (Doc. 84-8 and 84-9).  Second, Plaintiff offers a series of emails as proof of Quicken's willfulness.  (Doc. 84, Exhibits 8 and 9).

Before evaluating Plaintiff's evidence, the Court addresses Quicken's contention that the series of emails offered by Plaintiff should not be considered.  (Doc. 88 at 12).  The emails include Quicken's internal communications and its communications with a third-party vendor (CoreLogic Credco) regarding the meaning and implementation of § 1681g(g)(1).  Plaintiff offers them as evidence of Quicken's knowing violation of the FCRA.  (Doc. 84 at 9 – 12 and Exhibits 8 and 9).  Quicken argues that "Plaintiff did not identify these documents in any discovery in this case in response to Quicken Loans' multiple requests for evidence supporting her willfulness claim." (*Id.* at Exhibits 2 and 3).  Quicken argues Plaintiff "cannot sandbag Quicken Loans and try to use documents for the first time in summary judgment that she never identified in discovery in response to Quicken Loans' on point requests."  (Doc. 88 at 12).

Plaintiff filed this action on December 6, 2017 (Doc. 1), and trial was set for May 2019.  (Doc. 27).  Following various amendments, the operative Scheduling Order was entered on May 23, 2019, without objection from Plaintiff.  (Doc. 68).  That Order closed discovery on July 8, 2019 and required dispositive motions to be filed by August 7, 2019.  Plaintiff first identified the emails in her Opposition to Quicken's Motion for Summary Judgment, which she filed on August 28,

2019, after the close of discovery and more than a year and eight months after filing suit.  (Doc. 84).

As Plaintiff seeks to use these emails to support her claim, she was required to produce them under Rule 26 of the Federal Rules of Civil Procedure:

> a party must, without awaiting a discovery request, provide to the other parties . . . a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment[.]

Fed. R. Civ. P. 26(a)(ii).  Plaintiff failed to do so.  Also, these emails were clearly requested by Quicken, but Plaintiff failed to identify or produce them in response to interrogatories and requests for production propounded by Quicken.  (Doc. 88-2; Doc. 88-3).  In fact, the Court finds that Plaintiff failed five (5) separate obligations to identify the contested emails: Rule 26(a) initial disclosures, Rule 26(e) supplemental disclosures, answers to Quicken's interrogatories, responses to Quicken's requests for production, and answers to Quicken's questions in deposition.  Furthermore, Plaintiff's deposition testimony was not merely a failure to disclose the emails; it constituted an affirmative denial that she had any knowledge of such evidence.  (Doc. 79-3 at 45 – 46).

Rule 37 of the Federal Rules of Civil Procedure provides, "[i]f a party fails to provide information . . . the party is not allowed to use that information . . . to supply evidence on a motion . . .  unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1). When considering whether such a failure is substantially justified or harmless, courts examine "the non-disclosing party's explanation for its failure to disclose, the importance of the information, and any prejudice to the opposing party if the information had been admitted."

*Boca Raton Sailing v. Scottsdale, Ins. Co.,* 2019 U.S. Dist. LEXIS 145795, *4 (S.D. Fla. 2019) (citing *Romero v. Drummond Co.*, 552 F.3d 1303, 1321 (11th Cir. 2008)); *see also Cooley v. Great S. Wood Preserving*, 138 F.App'x 149, 161 (11th Cir. 2005).  "Other relevant considerations include whether the undisclosed evidence was a surprise to the opposing party, whether the non-disclosing party acted in bad faith . . . and whether the prejudice can be cured."  *Barron v. Everbank*, 2019 U.S. Dist. LEXIS 61985, *9 (N.D. Ga. 2019) (citing *Vitola v. Paramount Automated Food Servs., Inc.*, 2009 U.S. Dist. LEXIS 130110, *3 (S.D. Fla. Dec. 17, 2009) and *Blackledge v. Ala. Dep't of Mental Health & Mental Retardation,* 2007 U.S. Dist. LEXIS 79476, *35 - 37 (M.D. Ala. Oct. 25, 2007)); *see also* Pitts *v. HP Pelzer Auto. Sys.,* 331 F.R.D. 688, 696 (S.D. Ga. 2019) (citing *Abdulla v. Klosinski*, 898 F. Supp. 2d 1348, 1359 (S.D. Ga. 2012)).   The Court in *Vitola, supra,* described other considerations as including, "willfulness involved in not disclosing the evidence at an earlier date." 2009 U.S. Dist. LEXIS 130110 at *3.

**Plaintiff Offers no Explanation of her Failures:**  As the non-disclosing party, it is Plaintiff's burden to establish that her failures were "substantially justified or harmless."  *See Mitchell v. Ford Motor Co.*, 318 Fed. Appx. 821, 825 (11th Cir. March 9, 2009) (quoting *Leathers v. Pfizer, Inc.,* 233 F.R.D. 687, 697 (N.D. Ga. 2006): "'The burden of establishing that a failure to disclose was substantially justified or harmless rests on the non-disclosing party.").  However, Plaintiff offers no explanation whatever for her serial failures to produce or identify the contested emails.  She offered them for the first time in opposition to summary judgment without even acknowledging her failures to produce them at an earlier date.  *Compare Goodman-Gable-Gould Co. v. Tiara Condo. Ass'n*, 595 F.3d 1203, 1213 (11th Cir. 2010) (affirming exclusion under Rule 37 where party failed to disclose certain theories of recovery and damages in its answer, counterclaim, and initial

interrogatory responses and failed to supplement its initial disclosures) *with Kearney Constr. Co.*

*LLC v. Travelers Cas. & Sur. Co. of Am*., 2017 U.S. Dist. LEXIS 123370, *13, 16 (M.D. Fla. Apr. 19,

2017) (finding exclusion excessive when no scheduling order or trial date were set); *see also*

*Fisher v. Ciba Specialty Chems. Corp*., 238 F.R.D. 273, 285 (S.D. Ala. 2006) (striking an affidavit

where the "real issue" of its admissibility concerned its timeliness: "The springing of multiple

last-minute evidentiary surprises on defendants' counsel with no explanation is inexcusable,

particularly in light of the grueling 18-month class discovery period to which the parties were

subjected and the nearly three-year lapse between the filing of the Complaint and the Hearing.").

Plaintiff's failure to proffer any explanation weighs in favor of exclusion.[2]

**The Emails are Important:** The emails are important to Plaintiff's suit under the FCRA.

Plaintiff offers them as evidence of a *prima facia* element of her claim, *i.e.*, Quicken's willfulness.

Courts are discouraged from excluding such evidence. *See Pitts v. HP Pelzer Auto. Sys.*, 331 F.R.D.

688, 697 (S.D. Ga. 2019) (citing *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1332 (11th Cir. 2014):

"Excluding the evidence symbolizes the Court turning a blind eye to facts at the heart of this

dispute. Such an act cuts against the Court's overarching goal for resolving litigation. As often

stated in the Eleventh Circuit, courts have a strong preference for deciding cases on the merits.")

(quotation marks omitted). This factor weighs against exclusion.

**Surprise and Prejudice to Quicken**: The prejudice caused to Quicken by Plaintiff's failures

is substantial. Though Quicken may have had record of the contested emails, Plaintiff's failure to

identify them deprived Quicken of notice, to which it was entitled, of the evidence Plaintiff would

---

[2] Plaintiff did not seek leave to file an additional brief to rebut Quicken's contention in its Reply that the emails should not be considered based on Plaintiff's failures.

use to support her claim.  That Quicken was a party to the emails does not release Plaintiff of her obligations under Rule 26 or of her obligation to respond truthfully in deposition and to discovery requests.  Had Plaintiff not utterly failed her Rule 26 and other discovery obligations, Quicken would have had notice of a need to attempt additional discovery or to marshal additional evidence that might have clarified or supplemented these communications.

These circumstances differ from *Boca Raton Sailing v. Scottsdale Ins. Co*., for example, where the court permitted evidence which was not disclosed in the course of the litigation but which the plaintiff-insured had provided to the defendant-insurer "prior to the initiation of [the] action as a result of [plaintiff-insured's] claim-reporting process."  2019 U.S. Dist. LEXIS 145795, *3 – 5 (S.D. Fla. June 17, 2019).  *Compare Boca Raton Sailing, supra,* with *Cunningham v. Fulton Cty.,* 2019 WL 1428346, *3 – 4 (N.D. Ga. Mar. 29, 2019) (refusing to consider evidence where plaintiff "assured" the defendant that all documents it intended to rely upon were produced, and thereafter, relied on unproduced documents at summary judgment).  The Court finds that Quicken was prejudiced and reasonably surprised by Plaintiff's identification of the emails for the first time in opposition to summary judgment.  These factors weigh in favor of exclusion.

**The Nature of Plaintiff's Conduct:**  On the record before it, the Court finds that Plaintiff could not have honestly concluded that the willfulness of Quicken's violation would not be an issue in the case, or that she did not intend to use the emails to support her claim.  Willfulness is a *prima facie* element of Plaintiff's cause of action.  Quicken and Rule 26 demanded Plaintiff's production of the emails well before Quicken challenged the issue of willfulness in its summary judgment motion.  The distinctions between this case and *Blackledge v. Ala. Dep't of Mental Health & Mental Retardation*, 2007 U.S. Dist. LEXIS 79476 (M.D. Ala. 2007) are illustrative.  Unlike

the Plaintiff here, the court in *Blackledge* found that "a reasonable person in [the non-disclosing party's] position honestly could have concluded (mistaken or not) that, until raised in Defendants' summary judgment motion," that the subject of the non-disclosure "was not at issue and, thus, that [the non-disclosed document] was not a document which would be 'use[d] to support [the non-disclosing party's] claim[.]' Fed. R. Civ. P. 26(a)(1)(B)." *Blackledge*, 2007 U.S. Dist. LEXIS 79476 at *40.  In *Blackledge*, the court found no evidence of bad faith where the record revealed that plaintiff "had no plans to use [the exhibit] to support her [claim]" and there was "no reason . . . it would be advantageous to [plaintiff] to conceal this [evidence] from Defendants." *Id. at* *42-43.   However, the Court finds an advantage exists here.  Plaintiff's failures to disclose deprived Defendant of notice of a need to discover or assemble clarifying or contextualizing evidence to rebut Plaintiff's arguments based on the emails.  The nature of Plaintiff's persistent failures to disclose weighs in favor of exclusion.

**Whether the Prejudice can be Cured:** The Court finds the prejudice Quicken has suffered as a consequence of Plaintiff's non-disclosure cannot be cured by any lesser sanction.  When assessing whether the prejudice of undisclosed evidence can be cured, courts look to the appropriateness of other remedies or sanctions before exclusion.  *See e.g., Blackledge v. Ala. Dep't of Mental Health & Mental Retardation*, 2007 U.S. Dist. LEXIS 79476, at *42 (M.D. Ala. Oct. 25, 2007) ("Blackledge's alleged untimely disclosure could have been cured by permitting Defendants an extension of the discovery deadline to discern the authenticity of the letter . . . Defendants avert discussion of whether alternative relief or lesser sanctions would suffice and seek the most severe remedy as a sanction.").  However, "[w]hen lesser sanctions would be ineffective, Rule 37 does not require the vain gesture of first imposing those lesser sanctions."

*People for the Ethical Treatment of Animals, Inc. v. Dade City's Wild Things, Inc.,* 2019 U.S. Dist. LEXIS 227862, at *39-40 (M.D. Fla. July 30, 2019).  In this instance, Plaintiff failed every obligation to identify these documents as evidence she intended to use to support her claim.  In light of the ample occasions afforded Plaintiff to comply with Rule 26, and then with numerous discovery requests, Quicken should not be put to additional discovery and preparation at this advanced stage of the proceedings.  Along with her failure to provide any explanation of her failures, Plaintiff has failed to address or suggest a proper remedy.  This factor weighs in favor of exclusion.

The Court finds that Docs. 84-8 and 9 are due to be excluded.

**B.      Plaintiff's Failure to Demonstrate a Genuine Issue of Material Fact on Willfulness**

Having excluded the contested emails, the Court concludes on the record before it that Plaintiff has failed to demonstrate any genuine issue material issue of fact regarding Quicken's willfulness, which is an essential element of her claim.  The Court is mindful that Plaintiff argues Quicken's willfulness is evident based on regulatory signposts and district court opinion.  The Court is not persuaded.

The disputed section of the FRCA here is § 1681g(g)(1), which states:

> Any person who makes or arranges loans and who uses a consumer credit score . . . in connection with an application initiated or sought by a consumer for a closed end loan or the establishment of an open end loan for a consumer purpose that is secured by 1 to 4 units of residential real property . . . shall provide the following to the consumer as soon as reasonably practicable

Quicken's reading of this section is set out in its Memorandum of Law in Support of its Motion for Summary Judgment (Doc. 78) and Reply Brief (Doc. 88).  In sum, Quicken's reading is that Plaintiff was not the applicant, that it did not use Plaintiff's credit score "in connection with and

application," and that Plaintiff was not "the" consumer to whom Quicken "shall provide" a CSD.

The Court does not reach the question of whether Quicken's reading is correct but does find that

it is not "objectively unreasonable."   First, section 1681(g)(1), unlike section 1681e(b) for

example, contains "statutory text that is less than pellucid and which has not been construed in

detail by the Court of Appeals."   *Smith v. E-BackgroundChecks.com, Inc.*, 81 F. Supp. 3d 1342,

1348 (N. Ga. 2015).   Given especially the alternating uses of "a" customer and "the" customer,

it is not surprising that the parties have been able to read the text in contradictory directions

using distinctions between definite and indefinite articles.   While those sorts of distinctions are

properly employed to determine the singularly correct interpretation of a statute, in this case

they indicate that this section has more than one objectively reasonable interpretation.   The

Court finds that Quicken's reading is not an "objectively unreasonable" one.[3]

Plaintiff has failed to establish a genuine issue of disputed material fact that Quicken

willfully violated 15 U.S.C. §1681g(g)(1).   Defendant is due summary judgment on that ground.

**CONCLUSION**

For the reasons set forth above, Defendant's Motion is hereby **GRANTED**.

**DONE and ORDERED** this 19th day of March, 2020.

/s/ JEFFREY U. BEAVERSTOCK
UNITED STATES DISTRICT JUDGE

---

[3] The finding that Quicken's interpretation is "not objectively unreasonable" would also prevent the Court from considering the series of emails offered by Plaintiff, even assuming they were not excluded under Rule 37(c), to the extent that they were offered as evidence of Quicken's subjective intent.   *See Pedro*, 868 F.3d at 1280 (citing *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1319 (11th Cir. 2009) (declining to consider the subjective intent of a consumer reporting agency when it "act[ed] in accord with an objectively reasonable interpretation of the Act.")).